(No. 19435.—

THE CHICAGO TITLE AND TRUST COMPANY, Plaintiff in Error, *vs.* WALTER B. PRENDERGAST, Defendant in Error.

*Opinion filed June 19, 1929—Rehearing denied October 5, 1929.*

SHERMAN C. SPITZER, NORBERT B. TYRRELL, and CAS-
SIUS A. SCRANTON, (CHARLES L. BARTLETT, of counsel,)
for plaintiff in error.

CHARLES P. R. MACAULAY, for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, the Chicago Title and Trust Company,
filed its bill in the circuit court of Cook county against
defendant in error, Walter B. Prendergast, for the fore-
closure of a trust deed in the nature of a mortgage. After
hearing, a decree for foreclosure was entered. Upon ap-
peal to the Appellate Court for the First District the de-
cree was reversed and the cause remanded to the circuit
court, with directions to dismiss the bill for want of equity.
The cause is now before this court upon *certiorari.*

On April 7, 1921, John L. Metzen and Beulah V. Met-
zen, his wife, being indebted in the sum of $3500, executed,
endorsed and delivered their three notes of that date pay-
able to the order of themselves, notes A and B being for
$500 each, due, respectively, one and two years after date,
and note C being for $2500, due five years after date, with
interest at six and one-half per cent per annum, payable
semi-annually, and sixteen coupon notes evidencing their
liability for interest at six and one-half per cent, payable
semi-annually, on the principal notes, respectively. To se-
cure the payment thereof Metzen and his wife made to

plaintiff in error their trust deed, dated April 7, 1921, on the premises in question. The trust deed was on April 8, 1921, recorded in the recorder's office of Cook county. It was afterwards agreed by the owners of the notes that the lien of the trust deed for the security of note C and its coupons should be superior to the lien for the other notes. Such agreement was thereupon endorsed on notes A and B and their coupons by the owners thereof. Subsequently Edgar A. Russell became the owner of notes A and B, and thereafter, default having occurred in the payment thereof, Russell instituted his suit for foreclosure in the superior court of Cook county, making the Chicago Title and Trust Company, as trustee under the trust deed, and others, defendants. Prior to the institution of the suit the Chicago Title and Trust Company had become the owner and holder of note C and its unpaid coupons, and as such owner and holder was a defendant in said cause. The Chicago Title and Trust Company thereafter filed its answer, and alleged, in substance, its ownership of note C and certain unpaid coupons, and claimed, as such owner and by virtue of the aforesaid agreement for subordination to the lien of note C and interest coupons owned by it of all the remaining indebtedness secured by the trust deed, that it was entitled to a first and prior lien under the trust deed for the payment of the indebtedness so held by it. Thereafter the cause was referred by the court to a master in chancery to take and report testimony, with his conclusions. At the hearing before the master it was stipulated by Russell, the complainant therein, and the Chicago Title and Trust Company as owner and holder of note C and accompanying coupons described in its answer, by their respective counsel then present, as a part of the record in the cause, that the lien of the complainant, Russell, for the payment of the indebtedness claimed by him, was subject to the lien claimed by the Chicago Title and Trust Company as the owner of note C and accompanying coupons described in the answer.

Thereafter the master duly reported his findings and conclusions to the superior court, and in his report found, among other things, that at the hearing before him the parties had expressly stipulated that all the indebtedness due to complainant in said cause was subordinate to the prior lien of the Chicago Title and Trust Company as to the principal and interest notes so owned by it, and accordingly that $1796.03 therein found to be due to said complainant constituted a lien in favor of said complainant, subject, however, to a prior lien in favor of the Chicago Title and Trust Company as the owner of note C and interest coupons described in its answer. The master found and reported as to note C and the interest coupons, "that the same are not being foreclosed in this proceeding;" that the Chicago Title and Trust Company, as trustee, had paid out $12.30 for stenographer's fees in and about the foreclosure of the trust deed, and that the fair and customary fee for the services of counsel who had been employed by the Chicago Title and Trust Company to protect its interest under the trust deed in said proceeding was $150 and that said amounts should be allowed to it, and that by reason of its being made a party to said proceeding it was entitled to priority out of the proceeds of sale, if any, of the mortgaged property to the extent of $162.30, and that it had a good lien upon the premises for that sum in addition to the lien of note C and interest notes so held by it. Thereafter a decree of foreclosure was entered in the cause, wherein, after reciting that the cause had duly come on to be heard upon the pleadings and the master's report, it was ordered, adjudged and decreed "that the said master's report be and the same is hereby in all things approved and confirmed," and by its decree the court found that $1796.03 was due to Russell, the complainant, and that $162.30 was due to the Chicago Title and Trust Company, trustee, for the payment of which John L. Metzen and Beulah V. Metzen, two of the defendants in said cause, were personally liable; and

it was decreed that the master make and deliver certificates of indebtedness to Russell and to the Chicago Title and Trust Company, as trustee, each for the respective amounts so found due; and it was further decreed, *inter alia,* in substance, that if the amounts due under said certificates should not be satisfied as provided by law, then that said real estate should be sold to satisfy the amounts due under the aforesaid certificates of indebtedness and that public notice of such sale be given, and that upon the making of such sale the master should report his acts and doings to the court, and upon confirmation thereof should execute and deliver to the purchaser a deed of conveyance; that out of the proceeds the master should first retain his fees, commissions and disbursements and then pay to the legal holder of said certificates the amount due, with interest, costs and advancements, if the proceeds were sufficient, and if there were a surplus, that the same should be brought into court to abide a further order. The decree further provided as follows: "It is further ordered, adjudged and decreed that upon the sale of said real estate as hereinbefore provided for, the defendants to this cause, and all persons claiming by, through or under them or any of them, shall be forever barred and foreclosed of and from any and all equity of redemption and claim of, in and to said premises and every part thereof." Thereafter, the amount due under said certificates not having been paid, the master, pursuant to the decree, duly advertised the premises for sale at public auction at one o'clock P. M. of June 4, 1926, at the judicial salesroom of the Chicago Real Estate Board, in said city. Knowledge of said intended sale having come to defendant in error, he prior to such sale examined or caused to be examined all of the proceedings theretofore had in the suit in the superior court, and thereby acquainted himself with the contents of the various pleadings, master's report, decree, etc., as hereinabove set forth, and thereby acquired knowledge that it was not the intention of the parties to

foreclose the lien of the trust deed so far as it was security for the payment of note C and interest coupons owned by the Chicago Title and Trust Company, and that Russell neither had nor claimed any lien in said premises except subject to the prior lien of the Chicago Title and Trust Company. The mortgaged premises were and are of the reasonable value of $7500, and prior to the sale Prendergast examined the property, caused it to be appraised and fully informed himself as to its value. As advertised pursuant to the decree, Master Holden duly offered the premises for sale, and pursuant to the intent of all of the parties to the cause announced to all bidders that the premises were being sold subject to the lien of the Chicago Title and Trust Company for the principal sum of note C, to-wit, $2500, and of the interest coupons, and called for bids accordingly. Prendergast thereupon bid $3100 for the property, subject to the lien, and, no higher bid being received, the same was struck off to him. Thereafter, on June 15, 1926, the matter came again before the superior court upon the motion of solicitor for Russell for an order confirming the sale so made by the master. Prendergast appeared by his attorney. John L. Metzen, one of the other defendants in the suit, was opposing the motion, and it was urged by the attorneys for Russell and for Prendergast as a reason why the court should speedily confirm the sale, that the indebtedness due on note C had become due and in default, and that it was desirable that the sale be so speedily confirmed in order that Prendergast might receive his deed and might prevent the institution of foreclosure proceedings then threatened upon the indebtedness secured by note C by paying and discharging such indebtedness. The superior court confirmed the sale. The master thereupon issued and delivered, in regular form, his deed conveying the property to Prendergast.

It is claimed by defendant in error and held by the Appellate Court that upon foreclosure of a trust deed in

the nature of a mortgage the cause of action is merged in the foreclosure and sale, and all rights and liabilities growing out of the trust deed are merged in the decree and enforced according to its provisions. The holder of a note due is not required to wait until the other notes secured by the same mortgage are due before he takes steps to enforce his security. Where a mortgage is given to secure sums of money falling due at different periods the creditor may foreclose by bill as they separately fall due. (*Northern Trust Co.* v. *Sanford,* 308 Ill. 381; *Morgenstern* v. *Klees,* 30 id. 422.) Unless in the decree it is otherwise provided, the effect of the foreclosure is to withdraw from the lien of the trust deed the notes of the complainants and to make the trust deed a security only for the remaining outstanding notes. *Boyer* v. *Chandler,* 160 Ill. 394.

Counsel for defendant in error insists that the decree of the superior court is final and should be given every full intendment as to the matters therein contained and that it directly decrees that the property shall be sold free and clear of any liens; that the master's deed so conveyed it, and that he had a right to rely upon the decree and purchase the property in conformity therewith. Neither the question of a collateral attack upon a decree of the superior court nor as to whether an innocent purchaser would have a right to rely on the contradictory decree of the superior court, is involved. This decree in one part decreed approval of the master's report, which found "note C for $2500, and interest notes C8, C9 and C10 for $81.25 each, are now owned by the Chicago Title and Trust Company as trustee of the estate of Charles H. Scott, deceased, and the same are not being foreclosed in this proceeding and the same constitute a prior and superior lien under said trust deed to the two principal notes for $500 each and the various interest coupons owned by Russell, the complainant; said notes of complainant being foreclosed herein bear endorsed upon them a clause subordinating them to the lien of the principal

note of $2500 and interest thereon, and the parties expressly stipulated at the hearing that all of the notes and all of the indebtedness under said trust deed due to complainant are subordinate and subject to the prior lien of the Chicago Title and Trust Company, as trustee of the estate of Charles H. Scott, deceased, as to said principal and interest notes now held by it," and in another part decreed that "upon the sale the defendants, and all persons claiming by, through or under them or any of them, shall be forever barred and foreclosed of and from any and all equity of redemption and claim of, in and to said premises and every part thereof." Defendant in error is not an innocent purchaser without notice. It is stipulated that if he were present at the trial he would testify to facts showing that he had full knowledge at the time he purchased the property that the same was being sold by the master in chancery subject to the lien of plaintiff in error here sought to be enforced. His attorney claims that at the time the master in chancery announced that the sale was being made subject to plaintiff in error's lien he knew that the decree purported to bar such lien. There is no question but that every bid which was made upon the property was made with the full understanding that the sale was being made subject to the lien which plaintiff in error here seeks to enforce. Assuming that defendant in error's attorney believed that notwithstanding such announcement such announcement could not be given legal effect and that the purchaser would get a good title free from plaintiff in error's lien, he stood by, to the detriment of plaintiff in error and the mortgage debtors, and allowed the bidding to proceed in accordance with the master's announcement and the property to be stricken off on the basis of such announcement. When the master's report of the sale was presented to the superior court for approval, defendant in error's attorney, who was present in court, gave no information to the court or to the attorney for plaintiff in error or the mortgage debtors that the sale

had not been made in conformity with the decree. He is estopped not only by his conduct (*Bondy* v. *Samuels,* 333 Ill. 535; *Milligan* v. *Miller,* 253 id. 511;) but by the circumstances under which the sale was made, from asserting any defense against plaintiff in error's attempted foreclosure in this case irrespective of the validity of the trust deed. Where one purchases land and pays a reduced price therefor by reason of the fact that a debt, for which the person whose title he secures is personally liable, is supposed to be secured by a mortgage on the land, thus making the transfer subject to the mortgage though it is not so expressed in terms, the propriety of denying to the transferee the right to question the existence of the supposed mortgage and to throw the burden of the debt on the person whose title he secures personally is sufficiently evident. In such case equity may well regard the land as charged, in the hands of the transferee, with the payment of the debt irrespective of the trust deed securing the debt. 3 Tiffany on Real Prop. (2d ed.) p. 2573; 3 Pomeroy on Eq. Jur. (4th ed.) sec. 1205; 2 Jones on Mortgages, (7th ed.) pp. 132, 155; *Crooks* v. *Douglas,* 56 Pa. St. 51; *Harlington Mill and Elevator Co.* v. *Yates,* 57 Neb. 286; *Horden* v. *Davis,* 26 N. Y. 495.

Defendant in error purchased the real estate in question with a full understanding between himself and all of the parties connected with the sale that the price was fixed by deducting the amount of the lien which plaintiff in error is now seeking to foreclose, and equity and good conscience require that he should be estopped from asserting any defense against the validity of such lien.

The judgment of the Appellate Court is therefore reversed and the decree of the circuit court affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*